

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00068-CR

———————————————————

DANIEL BRIAN HARPER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F23-1075-462

---

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

The jury convicted Appellant Daniel Brian Harper of continuous sexual abuse (CSA) of his nine-year-old stepsister, Sophie[1], two counts of indecency with a child by contact, and one count of online solicitation of a minor. In two issues, Harper contends that the trial court should have granted his motion for directed verdict on the CSA count because the evidence was insufficient to prove that the abuse occurred over the statutory time period and that his convictions for the indecency counts violated double jeopardy and the CSA statute. Because the evidence was sufficient to prove the CSA offense and because the indecency counts charged offenses were not covered by the CSA statute, we will affirm.

## Background

Sophie lived part of the time with her mother and stepfather and part of the time with her father Brian and stepmother Stephanie, who is Harper's mother. When Sophie was nine, Harper moved in with Brian and Stephanie for a short time after his home was damaged by a tornado. He moved in with the family in June 2020 and left in October or November to move in with his brother and sister-in-law.[2]

---

[1]To protect the anonymity of the complainant, we use pseudonyms to refer to her and her family members. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]Brian testified that Harper left in November, but Harper's sister-in-law testified that he moved in with her and her husband in October.

Sophie testified at trial; she was eleven at the time of trial and nine when the abuse happened. Sophie told the jury that after Harper had been living with the family for "a couple of weeks," he started rubbing her back in a way that made her uncomfortable. At some point, he began touching her on her "lower part"; when asked, she explained that by "lower part," she meant her vagina. She said that this touching happened about once a day during his stay with the family, and the last time it happened was "around Christmas" in 2020. Harper also sent her a photograph of his penis through Snapchat and a video of him "either peeing or moving his hand up and down." He also touched her breasts, and once he grabbed her hand and made her touch his genitals. Sophie was nine when these events occurred.

According to Brian, the family did not see Harper much after he moved out, but he was present when the family gathered with other family members for a gift exchange about a week before Christmas 2020. Sophie's family learned about the abuse on Christmas Day in 2020 because Harper sent a photo of his penis to Sophie's iPad while Sophie's older sister Mila was using it. Harper's face was in the picture, so Mila knew who had sent it. Mila, who was fifteen at the time, immediately told the girls' mother. A third sister was with Mila and also saw the picture. Sophie's mother testified that after her daughters told her about the photo, she spoke to Sophie and then called the police. She also called Brian and told him about the photo.

Brian then called Harper's brother Tom, and after that phone call, Tom told his wife Victoria that Harper had "been sending photos of his private parts to [Sophie]

through the iPad." Tom and Victoria both confronted Harper. Tom recorded his conversation, and that recording was published to the jury. In that conversation, Harper admitted that he had touched Sophie's genitals several times. Victoria testified that she also talked to Harper, and he told her that he had sent Sophie pictures "because she wanted them." He also said that he had touched Sophie's vagina and breast with his hands but "had not physically had actual sex with her." Victoria asked Harper "how long it had been going on," and he told her that it had been several months.

Nurse Debbie Ridge, a SANE nurse, testified about the sexual-assault exam that she performed on Sophie in January 2021. Sophie told Ridge that Harper would rub her "private part with his fingers inside [her] panties" and "rubbed [her] boobs under [her] clothes." She specifically mentioned a time when he had touched her genitals at a family Christmas party. Forensic interviewer Kim Kuntz also testified about her interview with Sophie in which Sophie described Harper's abuse, including the incident at the family Christmas party.

Denton Police Detective Scott Salazar testified about his investigation. In his interview of Harper, which was published to the jury, Harper explained that he had touched Sophie on her vagina and said that it "was mostly her idea." Harper said that he had begun touching Sophie's genitals around the end of October or beginning of November and that this continued until sometime in December. Salazar summarized

4

Harper's statement as the touching happening at least five times over a period of roughly sixty days, and Harper agreed with that summary.

At the close of the State's case, Harper moved for a directed verdict on all counts. The trial court denied the motion. The jury found Harper guilty on all charges and assessed his punishment at fifty years' confinement for CSA, seven years' confinement on each indecency-by-contact charge, and fifteen years' confinement for the online solicitation-of-a-minor charge. The trial court ordered the sentences of the first three counts to run consecutively and the sentence on the last count to run concurrently.

## Discussion

### I. Directed Verdict

Harper argues in his first issue that the court erred by failing to grant his request for directed verdict as to Count I, the CSA offense, because the State "wholly failed to produce any or sufficient evidence as to the requisite element of the complained[-]of conduct occurring in excess of the required thirty (30) day period." Harper's challenge to the denial of his directed-verdict motion is a challenge to evidentiary sufficiency. *Lucio v. State*, 351 S.W.3d 878, 905 (Tex. Crim. App. 2011). In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

5

319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The CSA statute provides that a person commits an offense if, among other elements, the person commits two or more acts of sexual abuse "during a period that is 30 or more days in duration." Tex. Penal Code Ann. § 21.02(b). The State thus must prove at least two acts of abuse and that "one act of sexual abuse occurred on at least the 29th day after the day of another act of sexual abuse." *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at *4 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (citing Texas Penal Code Section 21.02(d)). "However, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.* Harper contends that there was no proof of when the abuse began, and the jury therefore could not have agreed unanimously as to the requisite thirty-day time period. We disagree that the State's evidence was insufficient.

Even aside from Sophie's testimony that the abuse began within weeks of Harper's moving in with the family and that the abuse happened almost every day, the jury heard other evidence about the abuse time frame. The State played for the jury the recording of Harper's police interview in which he told the investigating detective that he had begun touching Sophie's genitals around the end of October or the beginning of November and that the last incident of abuse happened in December.

6

Harper's touching of Sophie's genitals was an act of sexual abuse under the CSA statute. *See* Tex. Penal Code Ann. § 21.02(c)(2). The SANE nurse testified that Sophie told her that Harper had touched her genitals at a family Christmas party, which other witnesses said took place approximately a week before Christmas. The forensic interviewer also testified that Sophie had told her about the abuse at the Christmas party. Thus, in addition to Sophie's testimony, the jury had evidence from which it could find that at least two acts of abuse occurred over a period of thirty days or more. Additionally, in Harper's interview with the police detective, he agreed with the detective's summary of Harper's statements that it happened at least five times over a period of about sixty days. Further, Harper's sister-in-law Victoria testified that when she had confronted Harper after learning about the picture that he had sent to Sophie, he told her that the abuse had occurred over several months. In summary, viewing the evidence in the light most favorable to the jury's verdict, the jury heard sufficient evidence from which it could unanimously find that at least two acts of abuse occurred over the requisite time period. We overrule Harper's first issue.

## II. No Double Jeopardy

In Harper's second issue, he argues that the trial court erred by separately submitting Count II and Count III to the jury, the indecency-by-contact offenses, "as same were prohibited by Texas Penal Code § 21.02(e) and double jeopardy." Again, we disagree.

7

We first address Harper's argument that the CSA statute prohibits his conviction for the two sexual-contact offenses. Subsection (c) of the CSA statute lists multiple offenses that, if committed over the statutory time frame, can establish the CSA offense. *Id.* § 21.02(c). Indecency with a child by contact is one of those offenses. *Id.* Subsection (e) provides that, with certain exceptions, a defendant may not be convicted in the same criminal action of both CSA and one of the predicate offenses listed under Subsection (c) if the complainant for both offenses is the same and the predicate offense occurred in the same period as the CSA. *Id.* § 21.02(e). Harper thus argues that he cannot be convicted for both CSA against Sophie and indecency by contact against Sophie.

However, the CSA statute expressly excludes touching a child's breast from the list of predicate offenses in Subsection (c)—that is, touching a child's breast cannot form the basis of a CSA offense, regardless of how many times it happens or for how long. *Id.* § 21.02(c)(2). Harper was charged with two counts of indecency by contact "of [Sophie] . . . by touching the breast of [Sophie]." Thus, the offenses with which Harper was charged in Counts II and III and for which the jury convicted him were offenses that could not constitute one of the predicate acts used to prove the CSA offense. *See id.* His separate prosecution for the indecency-by-contact offenses was not barred by Subsection (e). *See id.* § 21.02(c), (e); *see also Ramos v. State*, 636 S.W.3d 646, 652 (Tex. Crim. App. 2021) (stating that a defendant may be convicted of both CSA and another sexual offense occurring in the same time period if the non-CSA

8

offense is not "among the discrete statutory offenses listed in Subsection 21.02(c) that qualify as predicate 'acts of sexual abuse'" for purposes of prosecuting CSA).

Regarding his double jeopardy argument, Harper alleges that the convictions for Counts II and III punished him for the same conduct as the CSA offense. We reject this argument, as well.

The Double Jeopardy Clause in the federal constitution guarantees protection from receiving multiple punishments for the same offense. U.S. Const. amend. V; *Stephenson v. State*, 673 S.W.3d 370, 387 (Tex. App.—Fort Worth 2023, pet. ref'd). "[T]wo offenses may be the same if one is a lesser-included offense of the other or if the two offenses are defined under distinct statutory provisions but the legislature made it clear that only one punishment was intended." *Stephenson*, 673 S.W.3d at 387.

When two different statutes are at issue, "'the traditional starting point for determining 'sameness' for multiple-punishment double-jeopardy analysis is the *Blockburger* test.'" *Nawaz v. State*, 663 S.W.3d 739, 743–44 (Tex. Crim. App. 2022) (quoting *Ramos*, 636 S.W.3d at 651). We apply *Blockburger*'s "same-elements" test using a "cognate-pleadings approach" under which we determine "whether each offense, as pled in the charging instrument, contains at least one element that the other does not." *Id.* at 744 (citing *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015)). If each offense contains an element that the other does not, "then the presumption is that the offenses are *different*." *Id.* In our "same-elements" analysis, we look "only to

'the pleadings and the relevant statutory provisions[,]'" not 'the evidence presented at trial.'" *Id.* (quoting *Benson*, 459 S.W.3d at 72).

The El Paso Court of Appeals has recently held that prosecuting a defendant for both CSA and indecency by contact by touching a child's breast does not violate the Double Jeopardy Clause because each offense requires proof of an elemental fact that the other does not:

> As for [the indictment count in that case that] alleged a charge of indecency with a child by touching the breast of a child, the continuous abuse statute specifically excludes such charge from the predicate offenses allowed to support a conviction under the continuous abuse statute. *See* Tex. Penal Code Ann. § 21.02(c)(2). Because this type of indecency with a child offense is not a predicate offense allowed to be used to charge the offense of continuous sexual abuse of a child, the State was entitled to prosecute this non-predicate offense separately and independently, even though it occurred within the same time frame as that alleged in the continuous-sexual-abuse-of-a-child charge.

*Carbajal v. State*, 659 S.W.3d 164, 184, 185 (Tex. App.—El Paso 2022, pet. ref'd).

Likewise, here, Counts II and III charged Harper with indecency by contact by touching Sophie's breast. As stated, touching a child's breast is an act that may not be relied on to prove up the CSA offense. Tex. Penal Code Ann. § 21.02(c). The indictment's pleading of the CSA count complied with this restriction and did not allege that Harper had committed CSA by touching Sophie's breast. Instead, it alleged that Harper had committed the CSA offense by committing the predicate acts of indecency with a child and aggravated sexual assault of a child by way of his "touching the genitals of [Sophie] and/or caus[ing] [Sophie] to touch the genitals of the

10

defendant and/or intentionally or knowingly caus[ing] the penetration of the sexual organ of [Sophie] by defendant's finger." Thus, proving the indecency counts required proof of an element that the CSA count did not, and proving the CSA offense required proof that the indecency counts did not. *See Carbajal*, 659 S.W.3d at 185; *cf.* *Brown v. State*, Nos. 02-22-00190-CR, 02-22-00191-CR, 02-22-00192-CR, 02-22-00193-CR, 2023 WL 4779490, at *4 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication) (noting that touching a child's breast and touching a child's genitals are distinct indecency-by-contact offenses and separate units of prosecution). Harper was not punished twice for the same conduct. We overrule Harper's second issue.

## Conclusion

Having overruled Harper's two issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 11, 2024